❑ Original          ❑ Duplicate Original

# UNITED STATES DISTRICT COURT
## for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No.23-915M(NJ) |
| Information associated with the three facebook usernames, | ) |
| that are stored at premises owned, maintained, controlled, or | ) Matter No. 2022R00355 |
| operated by Meta Platforms, Inc., as further described in | ) |
| Attachment A. | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

      An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location):*
  See Attachment A.

      I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
  See Attachment B.

    **YOU ARE COMMANDED** to execute this warrant on or before 5/9/2023 _____ *(not to exceed 14 days)*
  ❑ in the daytime 6:00 a.m. to 10:00 p.m.   ✔ at any time in the day or night because good cause has been established.

    Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

    The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to      Honorable Nancy Joseph _____ .
                                                   *(United States Magistrate Judge)*

    ❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
  ❑ for _____ days *(not to exceed 30)*   ❑ until, the facts justifying, the later specific date of _____ .

Date and time issued:4/25/2023 @ 3:20 p.m. _____          *Nancy Joseph*
                                                          *Judge's signature*

City and state:  Milwaukee, Wisconsin _____          Honorable Nancy Joseph, U.S. Magistrate Judge
                                                             *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**
**Matter No. 2021R00182**

This warrant applies to information associated with the following Facebook account:

| FACEBOOK USER NAME | FACEBOOK URL |
|---|---|
| TrellBeen GettinTwoit | https://www.facebook.com/trellbeen.gettintwoit |
| Dontrell Franklin | https://www.facebook.com/miltown.savage |
| RackedUp Rico | https://www.facebook.com/profile.php?id=100082611494603 |

that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B
### Particular Things to be Seized
### Matter No. 2021R00182

**I.      Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)      All contact and personal identifying information, including**:** full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)      All activity logs for the account and all other documents showing the user's posts and other Facebook activities from July 1, 2022, to present;

(c)      All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them from July 1, 2022, to present, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)      All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which

34

the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All other records of communications and messages made or received by the user from July 1, 2022, to present, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(f)     Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account from July 1, 2022, to present;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)   All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)   All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

(r)   Records relating to who created, used, or communicated with the user ID, including records about their identities and whereabouts.

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of conspiracy to possess with the intent to distribute and distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846; and possession and discharge of a firearm in furtherance of drug trafficking resulting in death, in violation of Title 21, United States Code, Sections 924(c) and 924(j), and possession of firearms by felons, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2) have been committed by Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ, Tasha M BROWN, Frank SHAW, Shannone BROWN and other identified and unidentified subjects since July 1, 2022, to present, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a)   The sale of illegal drugs or firearms, or any information as to possible homicide of RODRIGUEZ-PEREZ, any preparatory steps taken in furtherance of the criminal scheme or homicide, and communications between Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ, Tasha M BROWN, Frank

36

SHAW, Shannone BROWN and others related to the relevant offense conduct of the sale of illegal drugs and firearms or homicide of RODRIGUEZ-PEREZ.

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation; and

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 23-915M(NJ) |
| Information associated with the three facebook usernames, that are stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., as further described in Attachment A. | ) ) ) | Matter No. 2022R00355 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| See Attached Affidavit | Conspiracy to possess with the intent to distribute controlled substances, Possession and discharge of a firearm in furtherance of drug trafficking resulting in death and possession of firearms by felons |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

DEA SA Aaron Hoppe
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone *(specify reliable electronic means)*.

Date: 4 / 25 / 2023

_____
*Judge's signature*

City and state:  Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT
### Matter No. 2022R355

I, Aaron Hoppe, a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), being first duly sworn, hereby depose and state as follows:

## I.    INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for search warrant for information associated with the following Facebook usernames "TrellBeen GettinTwoit," "Dontrell Franklin," and "RackedUp Rico," (collectively "Target Accounts"), that is stored at premises owned, maintained, controlled, or operated by Meta Platform Inc., ("Meta") a company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A and B.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta Platform Inc to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.      I have been a law enforcement officer since May 30, 2007.  I am currently assigned to the Waukesha County Sheriff's Department Detective Bureau.  I have been assigned to a Federal Drug Task Force (Milwaukee HIDTA) and have been assigned to the Waukesha County Metro Drug Unit in 2012-2013, 2015-2017, and from 2022-present.  I have been a part of hundreds of state and federal investigations related to drug activity.

3.      I have received extensive training in death investigations, narcotics investigations, cell phone analytics, and I am currently a member of the Board of Directors for the Wisconsin Association of Homicide Investigation.

4.      I have conducted investigations ranging from death, drug, property, and child exploitative crimes by analyzing cell phone data including tower usage, call activity, and cellular activity while trying to pinpoint certain locations of suspects and/or victims.  I know that when conducting an investigation into many drug investigations, and drug related death investigations that the cellular phone data will be a key piece of evidence based on my training and experience. Individuals who sell and use narcotics will mainly utilize their cell phone to set up a transaction for narcotics utilizing their cellular phone or a special application downloaded on their phone.  I know it is common practice for most people to rely heavily on the use of cellular telephones or electronic devices for many aspects of their daily lives. People commonly use cellular telephones or electronic devices to send and receive text messages, make voice calls, interact on social media, store contact information, store personal identifying data, maintain calendars or agendas, utilize maps or GPS functions, access the internet, and take photographs and videos.

5.      I have received training in the investigation of unlawful possession of firearms and possession of firearms by prohibited persons, as well as drug trafficking and related offenses. I have been trained regarding these offenses and have arrested individuals for federal firearms related offenses, as well as drug trafficking offenses. I have also investigated drug trafficking offenses at the state and federal level, including violations of Title 21, United States Code, Sections 841 and 846.  I know from training and experience that those that commit crimes commonly communicate, photograph, videotape, and organize using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media.

6.      I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I am aware that those that engaged in drug trafficking

2

and firearm trafficking often used these types of devices to access social media accounts to conduct their illegal conduct. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

7. I have participated in the execution of numerous search warrants in which weapons, narcotics, and/or evidence of drug trafficking were seized in violation of state and federal laws. I am familiar with the different types and calibers of firearms and ammunition commonly possessed for illegal purposes, as well as the methods used to conduct narcotics trafficking. I have had a variety of formal, informal, and on the job training in the investigation of firearms trafficking and drug trafficking. Additionally, I am familiar with street name(s) of firearms, controlled substances, and related topics, as well as has knowledge of the use of money laundering to conceal ill-gotten money.

8. This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is also based upon information gained from

interviews with cooperating witnesses, and informants, whose reliability is established separately herein.

9.      The investigation to date has included traditional law enforcement methods, including, but not limited to: confidential informants, information from other law enforcement officers; recorded conversations; controlled buys; documentary evidence; physical surveillance; telephone records; electronic surveillance; and physical seizures.  However, because this affidavit is submitted for the limited purpose of securing authorization for search warrants, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are essential to establish the necessary foundation for the requested search warrant.

10.      I am currently participating in an investigation of drug trafficking, firearms trafficking, and possession of firearms in furtherance of drug trafficking, including the discharge of a firearm involving a homicide involving Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ, Tasha M BROWN, Shannone BROWN, Frank SHAW and other identified and unidentified subjects.  I am familiar with the facts and circumstances regarding this investigation as a result of my personal participation in this investigation, and my review of: (a) consensually recorded telephone conversations and face-to-face meetings; (b) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers; and (c) information obtained from numerous witnesses, including confidential sources.

11.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of conspiracy to possess with the intent to distribute and distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846; and possession and discharge of a firearm in

4

furtherance of drug trafficking resulting in death, in violation of Title 21, United States Code, Sections 924(c) and 924(j), and possession of firearms by felons, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2) have been committed by Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ, Tasha M BROWN, Frank SHAW, Shannone BROWN and other identified and unidentified subjects.

12.     This affidavit is submitted in support of an application for a search warrant for FRANKLIN's Facebook Accounts "TrellBeen GettinTwoit," (Figure 1), and "Dontrell Franklin," (Figure 2), and RODRIGUEZ-PEREZ's Facebook Account, "RackedUp Rico," (Figure 3), (collectively "Target Accounts"), for evidence of FRANKLIN and Daniel RODRIGUEZ-PEREZ, and others' involvement in the above-described offenses between July 1, 2022, to present. More specifically, I seek authorization to search Facebook's information associated with FRANKLIN and RODRIGUEZ-PEREZ, who is the user associated with the Facebook accounts with the following usernames and ID numbers:

| FACEBOOK USER NAME | FACEBOOK URL |
|---|---|
| TrellBeen GettinTwoit | https://www.facebook.com/trellbeen.gettintwoit |
| Dontrell Franklin | https://www.facebook.com/miltown.savage |
| RackedUp Rico | https://www.facebook.com/profile.php?id=100082611494603 |



**TrellBeen GettinTwoit**

(Figure 1)

5



**Dontrell Franklin** (Trell Lowkey Trappin)

(Figure 2)



**RackedUp Rico**
485 friends

(Figure 3)

## II.     PROBABLE CAUSE

### A.     BACKGROUND

15.     Beginning in July 2022, case agents began investigating an armed drug trafficking organization (ADTO) operating in the Eastern District of Wisconsin, which involves Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Tasha M. BROWN, and other identified and unidentified subjects. Through confidential sources, undercover controlled buys, physical surveillance, and electronic surveillance case agents have learned this ADTO sells fentanyl, purported to be heroin, methamphetamines, cocaine, ghost guns, and switches (device which converts a semi-automatic firearm into a full-automatic firearm).  Case agents also determined that members of the ADTO use multiple residences and multiple vehicles, including rental vehicles, to store and distribute their narcotics and firearms throughout the Eastern District of Wisconsin and

6

travel out of state to obtain the controlled substances and firearms.

16.     On July 1, 2022, a Confidential Source (CS) contacted investigators and stated that he/she has knowledge that Azjuan K. MERIWETHER is selling high quantities of heroin, which MERIWETHER told CS is actually "feti, methamphetamine and cocaine. Based on my training, experience, and investigation into this ADTO, I understand "feti" to mean fentanyl, which was also verified by CS. The CS indicated that MERIWETHER sells guns, including "ghost guns," which based on my training and experience are guns which are purchased pre-assembled and are later assembled and are in fact a functioning weapon, but these pre-assembled weapons do not have serial numbers associated and are untraceable.  In addition, CS indicated MERIWETHER sells switches for these guns, which based on my training and experience is a small part that is affixed to the weapon providing automatic fire capabilities on what would normally be a semi-automatic weapon.  This provides the individual utilizing the weapon with the opportunity to fire a large amount of ammunition in a short time period.

17.     CS stated that MERIWETHER is known to rent hotel rooms in "high class" hotels and use those rooms to cut and package the illegal narcotics that he purchases in large quantities and prepares them for delivery in the area.  CS also indicated that there is a "barber shop" in the area of 39th and North in Milwaukee, WI where MERIWETHER and his "crew" of "workers" cut and package illegal narcotics.  CS stated that there are a large number of handguns and long guns at the "barber shop" and indicated that the video that was observed on YouTube of MERIWETHER was produced at the "barber shop".

18.     CS information is credible and reliable, CS has given information concerning individuals involved in illegal activities which has been independently verified through this investigation.  The information has been verified through controlled buys, video recordings

7

obtained during the controlled buys, queries through law enforcement databases, and surveillance. CS is cooperating with law enforcement for consideration on pending criminal drug charges in Waukesha County as well as previous drug charges in Kenosha County. CS has no arrests or convictions relating to dishonesty but has had past arrests or convictions for felony drug offenses and other felony bodily harm offenses.

19.     Since July 5, 2022, CS and an undercover agent (UC) with ATF engaged in approximately 18 undercover controlled buys with members of the ADTO including MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ ("RICO") and others. Generally, during the controlled buys of controlled substances and/or firearms the CS placed a recorded phone call and/or sent recorded text messages to the target, captured audio and video of the controlled purchase, was followed to and from the controlled purchase location, was searched before and after the controlled purchase with no drugs, money, or weapons located, provide pre-recorded funds for the purchase of the controlled substance, debriefed after the controlled purchase, and the above evidence and statements reviewed and verified by law enforcement. Additionally, the controlled substances were all weighed and tested positive for the listed substance using Nark II test kits following the printed instructions and the target was identified by the CS through photographs and verified by investigators through DOT photographs, booking photos, and social media.  Further firearms were also tested by ATF.

20.     Between July 2022 and March 2023, CS and/or UC obtained approximately 790 grams of heroin, which some of the substances field tested positive for fentanyl also;  240 grams of methamphetamine; and 155 grams of cocaine from the ADTO during the controlled buys. Additionally, during 10 of the undercover controlled buys, the UC obtained approximately 20 firearms from the ADTO.  Some of the firearms were installed with a Glock auto-sear device

(switch), which converts a semi-automatic firearm into a full-automatic firearm, and other times the UC just purchased a Glock auto-sear device. The UC obtained approximately nine Glock auto-sear devices from the ADTO.

21.     During the investigation into the ADTO, FRANKLIN was identified as a member of the ADTO. Further FRANKLIN was identified by case agents as the likely connection to the heroin source and firearm and Glock auto-sear device source, based on statements made by MERIWETHER during controlled buys.

22.     Further, during the investigation into the ADTO, MERIWETHER also discussed purchasing kilograms of heroin from a source in Texas on October 13, 2022. During this conversation MERIWETHER stated that the "Mexican" has a source in Texas. MERIWETHER confirmed the "Mexican" was Daniel RODRIGUEZ PEREZ, aka "RICO."

23.     On November 1, 2023, CS and MERIWETHER were discussing a future drug transaction. CS and MERIWETHER discussed the purchase of 25 grams of heroin from MERIWETHER. In addition, MERIWETHER and CS discussed that CS would provide MERIWETHER with $5,000.00. MERIWETHER would then travel to Texas with "the Mexican," RODRIGUEZ-PEREZ, or MERIWETHER will meet with a source known by FRANKLIN that has connections in Texas where the ADTO can purchase kilograms of heroin.

24.     On December 27, 2022, MERIWETHER was arrested in Indiana after a lengthy vehicle pursuit with Indiana state law enforcement. Case agents learned from law enforcement in Indiana that MERIWETHER was in possession of approximately one pound of heroin, half of pound of methamphetamine, and a quarter of pound cocaine. The narcotics were located in a brown Louis Vuitton bag, which MERIWETHER was in possession of when he exited his vehicle and attempted to flee on foot at the conclusion of the vehicle pursuit. MERIWETHER was

subsequently charged in Vermillion County with 16 counts related to the vehicle pursuit and possession of narcotics and paraphernalia. The charges included possession with intent to deliver heroin, possession with intent to deliver methamphetamine, and possession with intent to deliver cocaine.

25. Case agents learned that MERIWETHER used the phone system in the Vermilion County Jail to make phone calls and also to send and receive text messages on a jail authorized cell phone that is monitored by the phone system provider. Case agents were provided access to all calls and texts, incoming and outgoing, for MERIWETHER while in custody. Case agents monitored numerous calls and messages between MERIWETHER and FRANKLIN, as well as other ADTO members.

26. On January 19, 2023, CS received a text message from FRANKLIN's telephone 414-254-8676 which was related to meeting CS and UC to sell 50 grams of heroin and a firearm. CS and UC later meet with FRANKLIN. FRANKLIN completed the transaction for heroin with CS and the transaction for the firearm with the UC. During the meeting, FRANKLIN indicated that he had additional firearms to sell to the UC, but that he needed to get keys to his storage unit.

27. On February 3, 2023, the UC met with FRANKLIN at 3907 North 24th Street, Milwaukee, Wisconsin. UC purchased two "ghost guns" (guns which are purchased pre-assembled and are later assembled and are in fact a functioning weapon, but these pre-assembled weapons do not have serial numbers associated and are untraceable) and a Glock 27 .with a Glock auto-sear device attached from FRANKLIN. Immediately following the firearms transaction, case agents observed FRANKLIN drive the Jeep to the Economy Inn at 7284 West Appleton Avenue, Milwaukee, Wisconsin, where he appeared to be staying. Based upon review of court-authorized

GPS location data from the Jeep that FRANKLIN drives, approximately one hour later, FRANKLIN traveled to 5117 West Fairmount Avenue, Milwaukee, Wisconsin.

28.     Additionally, throughout the investigation of the ADTO, court authorized GPS location data from that the Jeep that FRANKLIN drives revealed that the Jeep traveled to the area of 5117 West Fairmount Avenue, Milwaukee, Wisconsin on February 15, 2023, February 23, 2023, March 13, 2023, and March 27, 2023.

29.     On February 28, 2023, the UC communicated with FRANKLIN using telephone number 414-519-2009 and agreed to purchase one firearm with a Glock auto-sear device attached (machinegun) and two ounces of cocaine, which eventually occurred at Diamond Inn Motel, located at 6222 West Fond Du Lac Avenue, Milwaukee, Wisconsin.  Prior to meeting, the UC called FRANKLIN.  FRANKLIN informed the UC that FRANKLIN was obtaining the firearm from his storage unit and would be another 20 minutes. Case agents were conducting surveillance of FRANKLIN during this communication.  FRANKLIN was followed to SmartStop Self Storage located at 3420 West Capitol Drive, Milwaukee, Wisconsin.

30.     On March 3, 2023, case agents served SmartStop Self Storage facility with a grand jury subpoena and learned that Tasha BROWN, FRANKLIN's girlfriend, is named on a lease for a storage unit 1032 at that facility, SmartStop Self Storage, Unit 1032, located at 3420 West Capitol Drive, Milwaukee, Wisconsin.  Tasha BROWN supplied to the facility her listed number as 414-484-6089, which has been used by the ADTO.

31.     While conducting physical surveillance of FRANKLIN on March 27, 2023, case agents observed FRANKLIN operating a 2018 Jeep bearing Wisconsin license plate ARL-7820, which is registered to Tasha BROWN.  As set forth above, case agents had previously obtained a court order for a GPS tracking device to be placed on the Jeep, which is primarily operated by

FRANKLIN. Surveillance was conducted during this time and FRANKLIN was observed leaving the Economy Inn motel located at 7284 West Appleton Avenue, Milwaukee, Wisconsin at 11:33 am. FRANKLIN was alone at the time and was followed by surveillance team members and observed on GPS traveling to SmartStop Self-Storage Facility at 3420 West Capitol Drive, Milwaukee, Wisconsin. FRANKLIN arrived at the Storage facility at 11:40 am and departed at 11:45 am.

32.     After departing the SmartStop Self-Storage Facility, FRANKLIN was surveilled to a previously identified address associated with the ADTO, 5117 West Fairmount Avenue, Milwaukee, Wisconsin, which is the residence of Frank SHAW, who is suspected to be Tasha BROWN's brother. FRANKLIN arrived at the location at 11:49 am and exited the Jeep. FRANKLIN then met with an unknown black male who was standing next to a beige or brown in color Nissan Sentra that did not have any registration plates visible. Surveillance team members were unable to maintain constant visible surveillance of FRANKLIN during this time, but FRANKLIN was observed entering the Jeep and exiting the driveway at 11:53 pm. FRANKLIN was then followed to the area of North 21st Street and West Burleigh Road, Milwaukee, Wisconsin. Case agents lost visible surveillance of FRANKLIN, but the court authorized GPS showed the Jeep stopping at the residence of 3132 North 21st Street, Milwaukee, Wisconsin (the location where RODRIGUEZ-PEREZ was later murdered that evening). Case agents were familiar with 3122 North 21st Street, which was the address at which RODRIGUEZ-PEREZ and his former girlfriend Shannone BROWN, Tasha BROWN's sister, were known to reside previously.

33.     FRANKLIN was observed leaving the area of 3122 North 21st Street, Milwaukee, Wisconsin and was followed to another location before he returned to the Economy Inn at 12:15

pm. At 12:54 pm, FRANKLIN was observed leaving the Economy Inn by himself, and was followed directly to the address of 5117 West Fairmount Avenue, Milwaukee, Wisconsin arriving at 1:00 pm and remaining parked in the driveway until 1:39 pm. FRANKLIN was believed to have entered the residence during this time frame. At that point the Jeep left the driveway and was followed to multiple locations in the City of Milwaukee before surveillance was terminated. Case agents reviewed court authorized GPS data for the Jeep and noted that the Jeep had returned to the area of 5117 West Fairmount Avenue, Milwaukee, Wisconsin from 5:42 pm to 5:50 pm, and again from 5:57 pm and 5:58 pm on March 27, 2023, after surveillance had been terminated.

34.    On the morning of March 28, 2023, case agents learned that Daniel RODRIGUEZ-PEREZ ("RICO"), a member of the ADTO who had provided CS with controlled substances during two controlled buys, had been shot and killed on March 27, 2023, at 7:43 pm. Case agents are aware that RODRIGUEZ-PEREZ was a high value target in the MERIWETHER ADTO and ongoing surveillance was being conducted on RODRIGUEZ-PEREZ, including a pole camera that had been set up at his known residence located at 7028 35th Avenue, Kenosha, Wisconsin.

35.    Case agents met with detectives from the Milwaukee Police Department (MPD) regarding the homicide of RODRIGUEZ-PEREZ. Detectives briefed case agents on the information that was learned during the initial homicide investigation. The homicide occurred at 3122 North 21st Street (lower unit), Milwaukee, Wisconsin. At 7:43 pm, RODRIGUEZ-PEREZ exited the front door of the residence and was talking on a cell phone when he was shot multiple times and was declared deceased on the scene by medical personnel. There was a witness to the shooting, who was identified as M.N. M.N. is known to case agents as the current girlfriend of RODRIGUEZ-PEREZ and during the investigation case agents determined that M.N. lived with RODRIGUEZ-PEREZ at the residence located at 7028 35th Avenue, Kenosha, Wisconsin. During

13

the homicide investigation, RODRIGUEZ-PEREZ's girlfriend, M.N. told law enforcement that FRANKLIN had been threatening RODRIGUEZ-PEREZ prior to his homicide on March 27, 2023.

36.     Case agents learned that a search warrant was conducted at the 3122 North 21st Street after the homicide.  During the search conducted MPD located a handgun, an extended magazine, a drum magazine, loose ammunition, a digital scale, 357.5 grams of a clear glass like substance testing positive for methamphetamine, multiple assorted bottles containing a liquid believed to be "Lean" which in all likelihood contains Promethazine.

37.     Case agents reviewed the court authorized GPS data for FRANKLIN's Jeep and the GPS data revealed that the Jeep was in the alley behind 3128 North 21st Street, Milwaukee, Wisconsin, the scene of RODRIGUEZ-PEREZ's homicide, from 7:42 pm to 7:44 pm.  Case agents also learned that court-authorized electronic location information for FRANKLIN's phone 414-519-2009 revealed that the phone was in the area of 3128 North 21st Street, Milwaukee at the time the homicide of RODRIGUEZ-PEREZ occurred.

38.     Case agents also listened to MERIWETHER's jail calls from Vermillion County Jail in Indiana.  Case agents listened to a jail call by MERIWETHER on April 1, 2023, at 4:13 pm to 414-435-6047.  Based on prior jail calls between MERIWETHER and 414-435-6047 and review of MERIWETHER's Facebook account which was obtain pursuant to a search warrant, case agents determined the caller of 414-435-6047 to be Leo JEFF.  Case agents identified JEFF previously based on communications between MERIWETHER and "Jeff Leo" on Facebook.  Further, in a prior jail call between Meriwether and 414-435-6047, JEFF discussed missing court and a warrant being issued for his arrest.  Case agents are aware JEFF is facing felony charges in Milwaukee County Case 2022CF4808 and missed court on January 23, 2023.  The court issued a warrant for

14

JEFF's arrest. Other calls between MERIWETHER and JEFF discuss drug trafficking and JEFF attempting to distance himself from FRANKLIN. Case agents also reviewed JEFF's publicly viewable Facebook account in which JEFF is still opening selling drugs.

39. The following exchange occurred between MERIWETHER and JEFF on April 1, 2023, at the 4:17 mark in the recorded jail call.

> JEFF: You know who Frank is?
> MERIWETHER: What Frank?
> JEFF: He cut hair. You don't know nobody named Frank that be with Trell (Dontrell FRANKLIN)?
> MERIWETHER: Hell no.
> JEFF: Some nigga named Frank, that the one who set Rico (RODRIGUEZ-PEREZ) up. He set Rico up, told what's his name to come outside and Trell was in a cut outside waiting on him twist him.
> MERIWETHER: How he look?
> JEFF: I don't know we waiting on a picture now.

40. During the investigation into the ADTO, case agents learned that RODRIGUEZ-PEREZ was identified by the nickname "Rico," and that ADTO members used several nicknames for FRANKLIN including "Q," "Que," "T," and "Trell." Based upon their training, experience, and the investigation to date, case agents believe that JEFF was telling MERIWETHER that "Frank" (believed to be Frank SHAW) had set "Rico" (RODRIGRIGUEZ-PEREZ) up by telling him to come outside leading to his murder. Case agents are aware that RODRIGUEZ-PEREZ was murdered outside the residence of 3122 North 21st Street, Milwaukee, Wisconsin.

41. The conversation between MERIWETHER and JEFF continued but was not related to the above information. Based upon their training, experience, and the investigation to date, case agents believe MERIWETHER and JEFF's conversation related to the above information continued later in the recorded jail call at 9:45 mark.

> MERIWETHER: He light skinned.
> JEFF: Yup, kinda.
> MERIWETHER: He got braids or something?

15

JEFF: On my baby he got braids.
MERIWETHER: He got a tattoos on his face?
JEFF: What you say?
MERIWETEHR: He got tattoos on his face?
JEFF: Yup.
MERIWETHER: That Tasha's brother.
JEFF: Oh yea yup
MERIWETHER: They stay they off of Fairmount and 51st.
JEFF: Oh yea that's where Rico……

42.     Case agents identified an individual associated with the address of 5117 West Fairmount Avenue, Milwaukee, Wisconsin as Frank T. SHAW (XX/XX/1995). Case agents reviewed Wisconsin Department of Transportation (DOT) records from October 31, 2022, that indicated Frank SHAW's address is 5117 West Fairmount Avenue, Milwaukee, Wisconsin. Case agents obtained records that indicated Frank SHAW is listed on the utilities of 5117 West Fairmount Avenue, Milwaukee, Wisconsin as of October 20, 2022. Frank Shaw also has previously provided 5117 West Fairmount Avenue, Milwaukee, Wisconsin in court records as a home address in Waukesha County Case 2021CT270 which resolved on June 18, 2021. Case agents also reviewed records with Wisconsin Department of Corrections (DOC). On April 22, 2021, Frank SHAW provided a home address 5117 West Fairmount Avenue, Milwaukee, Wisconsin. In addition, case agents observed a DOC photo for Frank SHAW that was taken in 2019 (figures 1 and 2). Frank SHAW matches the description in the recorded jail call including having multiple facial tattoos. A case agent conducting surveillance of FRANKLIN on March 27, 2023, reviewed the DOC photo of Frank SHAW and confirmed that the individual observed in the driveway meeting with FRANKLIN at 5117 West Fairmount Avenue, Milwaukee, Wisconsin on March 27, 2023. The case agent further stated that Frank SHAW had braids on March 27, 2023.

16

 

(Figure 1)                    (Figure 1)

43.     SHAW has prior felony convictions including in Milwaukee County Case 2013CF3127 for burglary, Sheboygan County Case 2015CF569 for Take and Drive without Owner's Consent, Repeater, and Fond du Lac County Case 2019CF528 for Possession of THC (2nd offense), Repeater.   Based on this these prior convictions, SHAW is prohibited from possessing a firearm.

44.     Case agents reviewed call detail records for FRANKLIN's telephone 414-519-2009 and observed telephone number 414-803-5270.  Case agents obtained subscriber information from the service provider T-Mobile.  The subscriber of 414-803-5270 is Frank SHAW and 414-803-5270 is still active as of April 4, 2023.   Case agents reviewed call detail records between FRANKLIN and Frank SHAW's telephone 414-803-5270 and Frank SHAW's telephone 414-803-5270 and RODRIGUEZ-PEREZ.  FRANKLIN and Frank SHAW's telephone 414-803-5270  had 584 contacts since approximately February 1, 2023, till March 28, 2023.  Frank SHAW's telephone 414-803-5270 and RODRIGUEZ-PEREZ had 21 contacts since approximately February 1, 2023, till March 27, 2023, the date of RODRIGUEZ-PEREZ's death.

**B.      ARREST OF FRANKLIN AND BROWN AND SEARCHES**

45.     On March 28, 2023, case agents were conducted court authorized electronic surveillance, court authorized GPS surveillance, and physical surveillance of FRANKLIN.  On March 28, 2023, at 11:39 a.m. case agents observed FRANKLIN at SmartStop Self Storage at

17

3420 West Capitol Drive, Milwaukee, Wisconsin.  Case agents observed FRANKLIN walking around carrying what was believed to be an AR style rifle.  At 12:09 pm, case agents observed FRANKLIN at his residence of 3907 North 24th Street, Milwaukee, Wisconsin with the same AR style rifle. Between 12:57 pm and 3:47 pm, case agents observed FRANKLIN at 2028 North 39th Street, Milwaukee, Wisconsin.  At approximately 4:26 p.m., physical surveillance and court authorized GPS location data from the Jeep indicated FRANKLIN was about one block south of 5117 West Fairmount Avenue, Milwaukee, Wisconsin.  At 5:07 pm on March 28, 2023, case agent arrested FRANKLIN and BROWN on arrest warrants issued pursuant to a criminal complaint in Eastern District of Wisconsin Case 23-mj-358, *United States v. Franklin et al*.

46. Case agents also reviewed call detail records for FRANKLIN's telephone 414-519-2009 from March 27, 2023.  FRANKLIN and Frank SHAW's telephone, 414-803-5270 had 24 contacts on March 27, 2023.  Notably, FRANKLIN's call detail records reveal that there was no telephone contact between FRANKLIN and Frank SHAW's telephone, 414-803-5270 between 5:35 p.m. and 8:15 p.m. (the homicide of RODRIGUEZ-PEREZ occurred at approximately 7:40 p.m.).

47. Additionally, on March 28, 2023, case agents executed five search warrants for locations associated with the ADTO including 3907 North 24th Street, Milwaukee, Wisconsin, residence of BROWN and FRANKLIN; 3716 West North Avenue, Milwaukee, Wisconsin, a business used by the ADTO; Economy Inn, Room 118, 7284 West Appleton Avenue, Milwaukee, Wisconsin, hotel room used by BROWN and FRANKLIN; 7028 35th Avenue, Kenosha, Wisconsin 53142, RODRIGUEZ-PEREZ's residence; and SmartStop Self Storage Unit 1032 located at 3420 West Capitol Drive, Milwaukee, Wisconsin, BROWN's storage unit.

48. At 3907 North 24th Street, Milwaukee, Wisconsin, residence of BROWN and

18

FRANKLIN, case agents noted the residence appeared to be vacant, though several undercover controlled buys occurred just outside this location. Case agent did not locate anything of value at this location. Case agents did not locate an AR style rifle at this location. At 3716 West North Avenue, Milwaukee, Wisconsin, a business used by the ADTO, case agent did not locate anything of value. Case agents did not locate an AR style rifle at this location. At Economy Inn, Room 118, 7284 West Appleton Avenue, Milwaukee, Wisconsin, hotel room used by BROWN and FRANKLIN, case agents did not locate anything of value. Case agents did not locate an AR style rifle at this location. It appeared BROWN and FRANKLIN checked out that day.

49.     At 7028 35th Avenue, Kenosha, Wisconsin 53142, RODRIGUEZ-PEREZ's residence, case agents located a firearm that was possessed by RODRIGUEZ-PEREZ's girlfriend's brother, D.N. Case agents did not locate an AR style rifle at this location. D.N. told case agents that, with respect to RODRIGUEZ-PEREZ's homicide, RODRIGUEZ-PEREZ's (Rico's) "people were saying that Rico stole from them." Based upon their training, experience, and the investigation to date, case agents believe that Rico's "people" referred to FRANKLIN, who was identified as a source of supply for the DTO, and that when D.N. referred to Rico "stealing" from his "people," he was referring to Rico stealing either drugs or drug proceeds from other members of the DTO, including FRANKLIN.

50.     At SmartStop Self Storage Unit 1032 located at 3420 West Capitol Drive, Milwaukee, Wisconsin, BROWN's storage unit, case agents located an AK long gun, kilogram wrappers, and a blender with suspected drug residue. Case agents did not locate an AR style rifle at this location.

51.     Homicide detectives located two firearms with Glock auto-sear devices at 2028 North 39th Street, Milwaukee, Wisconsin during a consent search on March 28, 2023. 2028 North

39th Street, Milwaukee, Wisconsin was occupied by Montree SHAW, Frank SHAW's brother, and his girlfriend Amber HUBANKS. Consent to search the residence was obtained by MPD and along with Special Agents with the ATF. During the search two handguns were located in a bag and both HUBANKS and M. SHAW denied knowledge of the bag. The firearms were collected for evidentiary purposes and later tested. One of the firearms, a Glock 17, with an attached Green laser light and a Glock Auto-Sear device installed on it, matched the firearm utilized in a shooting which occurred at 3122 North 21st Street, on February 10, 2023 where a vehicle belonging to RODRIGUEZ-PEREZ was shot multiple times. The firearm also matched the firearm used in the homicide of RODRIGUEZ-PEREZ on March 27, 2023. Based on statements made by M. SHAW and HUBANKS, along with observations by member of the surveillance team, it is believed that FRANKLIN left the guns at the residence prior to his departure shortly before his arrest.

52. On March 28, 2023, case agents also executed a search warrant on T. BROWN's Jeep. Case agents located the following items: two cellphones, a black Adidas bag, an item believed to be a Glock Auto-Sear Switch but later determined to be a back plate to a Glock handgun, a digital scale, 5.3 grams of a substance testing positive for cocaine, 41.4 grams of a black tar like substance testing positive for heroin, and 57.5 grams of a substance testing positive for fentanyl.

53. Case agents did not locate the AR style rifle FRANKLIN possessed on March 28, 2023, prior to his arrest, and FRANKLIN was observed one block south of 5117 West Fairmount, Milwaukee, Wisconsin on March 28, 2023.

54. Case agents conducted a court authorized forensic extraction of FRANKLIN's telephone 414-519-2009, which was located on March 28, 2023. Case agents observed that all but 4 communications (24 contacts where identified by case agents following a review of call detail

records) on March 28, 2023, between FRANKLIN and Frank SHAW's telephone 414-803-5270 had been deleted.

55.     Following his arrest on March 29, 2023, FRANKLIN provided a mirandized statement to MPD.  FRANKLIN provided MPD a phone number of 414-484-6089, which case agents had previously identified this number as a number for Tasha BROWN.  FRANKLIN stated that he knew "Rico" (RODRIGUEZ-PEREZ) and that was his "boy".  FRANKLIN stated that he met "Rico" through "Rico's Uncle "Alex."

56.     FRANKLIN admitted that he and "Rico" sold drug together and sometimes "Rico" would sell on his own.  FRANKLIN stated that he believed the "MP13" was trying to "kill" him and "Rico."  This allegedly stemmed over a $100,000.00 drug debt.  FRANKLIN elaborated further indicating that "Rico had borrowed some drugs" and some "bullshit happened" and "Rico" allegedly did not pay back the supplier.  FRANKLIN stated that this caused him to "branch away" from "Rico," therefore losing his connection to his drug supply.  FRANKLIN also provided a partial phone number and Facebook account for RODRIGUEZ-PEREZ.   Based on the investigation into RODRIGUEZ-PEREZ's homicide, specifically witness statements, electronic surveillance, GPS location data, and the firearm located used in the homicide, case agents believed FRANKLIN was being dishonest about the murder.

57.     FRANKLIN admitted that he did make two stops on March 27, 2023 between 7:00 pm and 8:00 pm.  FRANKLIN stated that he sold drugs at two different locations, identified as North 38th and Lisbon and North 39th and Villard in Milwaukee, Wisconsin.  FRANKLIN stated that they drugs were locate inside the Jeep Cherokee were his and stated that he was going to "consume them" according to the report.  FRANKLIN identified the "red phone" located inside the Jeep as his with an assigned number of 414-254-8676, and stated the other phone in the car

was for his "kids". FRANKLIN stated that the residence located at 3122 North 21st Street is a "drop house" for drugs, meaning that there are large amounts of illegal narcotics at the residence that can be purchased.

58. Case agents reviewed a recorded jail call placed by Tasha BROWN on March 29, 2023, at 3:39 pm, while in custody at the Waukesha County Jail. BROWN called 414-519-9779 and spoke with an unidentified female (UF), possibly one her of sisters, and an unknown male (UM) who is in the background with the unidentified female. The UF told BROWN that the house "on 24th" was searched and BROWN stated that she is not concerned since she had not been there recently. The UF then stated that the "Montree's house" was searched. The UM then stated, "they are going to hit everyone" and "they are going to go to Frank's house." Based on the investigation into the ADTO and the calls between Meriwether and JEFF, "Frank" is believed to be Frank SHAW.

59. Case agents reviewed a forensic extraction of RODRIGUEZ-PEREZ's cellphone, which was located on him at the time of his death. Case agents located 10 contacts between Frank SHAW's telephone 414-803-5270 and RODRIGUEZ-PEREZ's cellphone on March 27, 2023, the day of the homicide. Case agents observed that Frank SHAW's telephone 414-803-5270 contact RODRIGUEZ-PEREZ's cellphone twice at around 7:07 pm on March 27, 2023, about thirty-five minutes before the homicide. From RODRIGUEZ-PEREZ's cellphone extraction it appeared RODRIGUEZ-PEREZ and Frank SHAW spoke for about 1 minute each time. Frank SHAW's telephone 414-803-5270 then call RODRIGUEZ-PEREZ's cellphone at 7:54 pm, about ten minutes after the homicide and again at 8:30 pm. These calls were not connected, consistent with RODRIGUEZ-PEREZ being deceased and not able to pick up the phone. Case agents also observed that RODRIGUEZ-PEREZ's cellphone received a call from 414-551-8136 at 7:42 pm,

one minute before RODRIGUEZ-PEREZ is murdered. Case agents reviewed call detail records for RODRIGUEZ-PEREZ's cellphone and Tasha BROWN's identified cellphone and believe 414-551-8136 is Shannone BROWN's cellphone number. Case agent obtained subscribe information from T-Mobile, which indicated the phone belongs to Shannone BROWN with a list address of 3122 North 21st, Milwaukee, Wisconsin, the location of the homicide.

60.     After observing the call from Shannone BROWN's telephone 414-551-8136 right at the time of RODRIGUEZ-PEREZ's murder, case agent reviewed call detail records between Shannone BROWN's telephone 414-551-8136 and Frank SHAW's telephone 414-803-5270. Case agents observed on March 27, 2023, the day RODRIGUEZ-PEREZ was killed, Shannone BROWN's telephone 414-551-8136 had 16 contacts with Frank SHAW's telephone 414-803-5270. Case agents observed Shannone BROWN's telephone 414-551-8136 called Frank SHAW's telephone 414-803-5270 six times between 7:45 pm and 7:48 pm. RODRIGUEZ-PEREZ was shot at 7:43 pm while on the phone with Shannone BROWN's telephone 414-551-8136. Further on March 28, 2023, Shannone BROWN's telephone 414-551-8136 had five contacts with Frank SHAW's telephone 414-803-5270.

61.     Case agents did not locate any contact on FRANKLIN's phone extraction for Shannone BROWN's telephone 414-551-8136. Case agents did not observe any contacts between FRANKLIN's telephone 414-519-2009 and Shannone BROWN's telephone 414-551-8136. Case agent are aware that there was no contact between FRANKLIN's telephone 414-519-2009 and Frank SHAW's telephone, 414-803-5270 between 5:35 p.m. and 8:15 p.m. (the homicide of RODRIGUEZ-PEREZ occurred at approximately 7:40 p.m.).

62.     Case Agents learned that the MPD interviewed several people for the homicide investigation. One of the individuals interviewed on March 27, 2023 was Monalease BROWN,

23

identified as the sister of Tasha BROWN and Shannone BROWN.  M. BROWN stated that she knew Daniel RODRIGUEZ-PEREZ as "Rico" and was aware that RODRIGUEZ-PEREZ was from Texas and is known to "sell drugs."  M. BROWN also indicated that RODRIGUEZ-PEREZ had "connections to drug cartels in Texas."

63.    M. BROWN indicated that she known Dontrell FRANKLIN and stated that she was aware that FRANKIN is dating Tasha BROWN and that FRANKLIN is a "drug dealer."  M. BROWN provided information that there was a dispute over seized funds and bail money, resulting from the arrest of FRANKLIN in August 2022 and subsequent posting of his $20,000 cash bond. M. BROWN then alleged that FRANKLIN "shot up" her residence and this incident is still under investigation.  FRANKLIN forced members of her family to pay him (FRANKLIN) an undisclosed amount of money to leave them alone. M.BROWN stated that FRANKLIN was continuing to threaten harm to RODRIGUEZ-PEREZ.

64.    On March 31, 2023, M. BROWN reached out to MPD again.  M. BROWN stated that she had information related to the incident.  She stated that her brother, Frank SHAW, had been calling her off and on throughout the day on March 30, 2023.  M.BROWN provided  SHAW's telephone 414-803-5270.  M. BROWN stated that she received a specific call on March 30, 2023 between 5:00 pm and 5:30 pm.  During this call SHAW informed M. BROWN that he (SHAW) had heard FRANKLIN was a confidential informant.  SHAW continued stating "Let that N**** know if he tell that I drove him, I'm telling on all the murders that he and Rico (RODRIGUEZ-PEREZ) did and he and Juan (MERIWETHER) did.  SHAW also told M. BROWN that he "told Rico to come outside because the weed man was outside."  M. BROWN stated that she did not know if SHAW had called RODRIGUEZ-PEREZ via phone number of Facebook.

65.    On April 8, 2023, Shannone BROWN provided a Mirandize interview to MPD.  S.

24

BROWN indicated that RODRIGUEZ-PEREZ was involved in the trafficking or illegal narcotics, specifically "boy and girl," which based on my training and experience, I know to be slang terms for heroin and cocaine.

66.     S. BROWN stated that the FRANKLIN was arrested in August 2022 for charges related to domestic abuse case where Tasha BROWN was the victim. During that arrest, FRANKLIN was arrested with $35,000.00 in his possession which S. BROWN stated was a mix of FRANKLIN and RODRIGUEZ-PEREZ's.   After his arrest, FRANKLIN was given a $20,000.00 cash bail which was paid by members of the ADTO.   S. BROWN indicated RODRIGUEZ-PEREZ provide $9,000.00, another member provided $7,000.00, Tasha BROWN provided $1,000.00, and MERIWETHER paid an undisclosed sum.

67.     Case agents are aware that FRANKLIN has multiple Facebook accounts with two specifically being identified.  The first one is identified with the Facebook username of "TrellBeen GettinTwoit," https://www.facebook.com/trellbeen.gettintwoit, and the second one identified with the username of "Dontrell Franklin," https://www.facebook.com/miltown.savage.  In regard to the account "Trellbeen GettinTwoit", the user posted two separate posts on the morning of March 28, 2023, the day following RODRIGUEZ-PEREZ's homicide.  The first post was at 12:58 am and showed a picture of RODRIGUEZ-PEREZ with the caption "Ball in heaven Brodie free Chefdon Juan II smh."  Case agents are aware that "Chefdon Juan II" is in reference to the known Facebook account for Azjuan MERIWETHER.  The second post was at 1:11 am and again showed a picture of RODRIGUEZ-PEREZ with two different emoji's posted above the photo.

68.     Case Agents identified a Facebook profile for RODRIGUEZ PEREZ with the username of "RackedUp Rico,"  https://www.facebook.com/profile.php?id=100082611494603. Case agents also observed that the two photos that were posted on FRANKLIN's Facebook

account "TrellBeen GettinTwoit" are on the open public profile for "RackedUp Rico."

69.     Case agents are aware that the ADTO does utilize Facebook messaging and call capabilities.  This ADTO has also used other social media, including Instagram, to conduct this illegal ADTO activities including obtaining firearms and obtaining and selling controlled substances.  Based on this knowledge along with the information learned by case agents, it is believed that there is evidence of the ADTO drug and firearm distribution, and information related to the homicide of RODRIGUEZ-PEREZ in the Target Accounts.

22.     Case agents believe the Facebook accounts associated with FRANKLIN, "TrellBeen GettinTwoit" and "Dontrell Franklin" and RODRIGUEZ-PEREZ, "RackedUp Rico," (Target Accounts) contains valuable information that could be used as evidence for the possible crimes of conspiracy to possess with the intent to distribute and distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846; and possession and discharge of a firearm in furtherance of drug trafficking resulting in death, in violation of Title 21, United States Code, Sections 924(c) and 924(j), and possession of firearms by felons, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2) which been committed by Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ, Tasha M BROWN, Frank SHAW, Shannone BROWN and other identified and unidentified subjects.

## **FACEBOOK INFORMATION**

23.     Case agents believe the Facebook content sought and outlined in Attachment B are evidence relating to this investigation are available to Meta.

24.     Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com.  Facebook users can use their accounts to share

communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

25.     Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Each Facebook user is assigned a user identification number and can choose a username.

26.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

27.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

27

28.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

29.     Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes.  Users can "tag" other users in a photo or video and can be tagged by others.  When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

30.     Facebook users can use Facebook Messenger to communicate with other users via text, voice, video.  Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and retains transactional records related to voice and video chats of the date of each call.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

31.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

32.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

33.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

34.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

35.     Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

36.     In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

37.     Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform.  For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

38.     Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

39.     Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

40.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used.  For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and

use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

41.     Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

42.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## JURISDICTION

43.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) &

31

(c)(1)(A).  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## **CONCLUSION**

44.     Based on the foregoing, I request that the Court issue the proposed search warrant.

45.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving it on Meta.  Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

**ATTACHMENT A**
**Property to Be Searched**
**Matter No. 2021R00182**

This warrant applies to information associated with the following Facebook account:

| FACEBOOK USER NAME | FACEBOOK URL |
|---|---|
| TrellBeen GettinTwoit | https://www.facebook.com/trellbeen.gettintwoit |
| Dontrell Franklin | https://www.facebook.com/miltown.savage |
| RackedUp Rico | https://www.facebook.com/profile.php?id=100082611494603 |

that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

**I.      Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)      All contact and personal identifying information, including**:** full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)      All activity logs for the account and all other documents showing the user's posts and other Facebook activities from July 1, 2022, to present;

(c)      All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them from July 1, 2022, to present, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)      All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which

the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All other records of communications and messages made or received by the user from July 1, 2022, to present, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(f)     Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account from July 1, 2022, to present;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

(r)     Records relating to who created, used, or communicated with the user ID, including records about their identities and whereabouts.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of conspiracy to possess with the intent to distribute and distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846; and possession and discharge of a firearm in furtherance of drug trafficking resulting in death, in violation of Title 21, United States Code, Sections 924(c) and 924(j), and possession of firearms by felons, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2) have been committed by Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ, Tasha M BROWN, Frank SHAW, Shannone BROWN and other identified and unidentified subjects since July 1, 2022, to present, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a)     The sale of illegal drugs or firearms, or any information as to possible homicide of RODRIGUEZ-PEREZ, any preparatory steps taken in furtherance of the criminal scheme or homicide, and communications between Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ, Tasha M BROWN, Frank

SHAW, Shannone BROWN and others related to the relevant offense conduct of the sale of illegal drugs and firearms or homicide of RODRIGUEZ-PEREZ.

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation; and

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

37